24   257
83   456

## DAVIS & CO. v. GIBBON.

1. **Assignment for benefit of creditors: PREFERENCES.** A debtor in
insolvent circumstances may pay or secure the claims of part of his
creditors to the exclusion of others. All his property may be given
in payment or security to one, and the transaction will not be con-
sidered fraudulent or void, as being in contravention with chapter
seventy-seven of the Revision, relating to general assignments.

2. **Fraudulent conveyance: PROCEEDS MAY BE SUBJECTED.** Where
the property which was the subject of a fraudulent sale cannot be
reached, the proceeds thereof will be held subject to the payment of
the debts of the fraudulent vendor.

*Appeal from Lucas District Court.*

TUESDAY, APRIL 14.

THIS is an equitable proceeding, under chapter 127 of the Revision, to subject certain property and choses in action of defendant, E. K. Gibbon, to a judgment, recovered against him, by the plaintiffs herein, in the District Court of Lucas county, for $1,951.54, and $4.45 costs, April 30, 1862, with interest at ten per centum per annum. The facts of the case are sufficiently stated in the opinion of the court.

*Perry & Townsend* for the plaintiffs.

*J. W. Wilkinson, Strong & Smyth* for the defendant.

BECK, J. — This cause turns mainly, if not entirely, upon questions of fact. It is not necessary, in truth it is not proper, that we give a detailed statement of the facts and the reasons for our decision, which would cover many pages of the reports and be of no benefit as a precedent to this and the other courts of the State. We will only attempt such a statement of facts, and our conclusions therefrom, that our decision may be intelligible and sufficient to guide the court below in finally settling the rights of the parties.

In February, 1862, E. K. Gibbon & Co. were indebted to Rindskopf, Brothers & Co., $4,086.96; to Ziller & Freidman, $250; to R. W. Booth & Co., $400; to M. E. Reeves & Co., $767.86; to plaintiffs, S. C. Davis & Co., and to ten or twelve other parties (whose names and the amount of their claims it is not necessary to state),—many of whom then had, or afterward received, security, either by mortgage of real estate, or by deposit of notes or book accounts as collaterals. About that time an agent of

Rindskopf, Bros. & Co. visited Chariton, where the firm of Gibbon & Co. were doing business, for the purpose of collecting or securing their claim. No arrangement seems to have been perfected between the debtor and the agent of the creditors, farther than a promise on the part of Gibbon, the principal business man of the firm, that he would soon visit Cincinnati, where the creditors resided, and effect some satisfactory settlement. The firm of Gibbon & Co. had a stock of goods in Chariton, worth, it would seem, about $4,000, and notes and book accounts, the value of which is not shown. Gibbon had a farm, with stock upon it, several tracts of land and some other property. The lands were mortgaged to different creditors. It appears, that both the firm and the individual members thereof were insolvent. Gibbon went to Cincinnati and settled with Rindskopf, Bros. & Co., executed notes for his indebtedness, and mortgages upon personal property on his farm, to secure the same, and made arrangements for the delivery of collaterals for the same purpose. He made also arrangements with Ziller & Freidman, R. W. Booth & Co. and M. E. Reeves & Co. (all of whom, it appears, resided at Cincinnati), to secure their respective claims, by delivering to them collaterals. All of these parties appointed J. S. Sheller (who was a brother-in-law, and cultivating the farm of Gibbon, under a contract whereby they shared the profits thereof), their agent to take charge of the property, and recover and collect the claims given them as collaterals. Sheller, as it appears from the evidence, owned an interest in the personal property mortgaged to Rindskopf, Bros. & Co.

March 1, 1862, Gibbon & Co. sold out their stock of goods to Parvin, a nephew of Gibbon, and a young man without means or experience in business, for $3,750, receiving in payment eight promissory notes, executed

by *Parvin*, without interest, and falling due at periods of from one to four years from the date thereof. These notes Gibbon turned over to Sheller as collaterals upon the aforesaid claims against him, and also to secure Sheller in an amount, which seems not to be,clearly determined by the evidence, due him on account of the property given to secure the debt to Rindskopf Bros. & Co., which was partly owned by him, or in which he had an interest.

It cannot be determined from the evidence, whether these notes were given under the arrangement made with his creditors in Cincinnati, or were given in addition to those provided for under that arrangement. Parvin sold the goods in August, to Palmer, who paid therefor $2,150 cash, and, in payment for the balance of the price agreed on for the goods, conveyed to Parvin certain real estate consisting of some lots in Chariton.

The money received of Palmer, he paid upon his notes held by Sheller. Sheller applied $1,500 of this money, on his claim against Gibbon, and the balance on the claims of the parties for whom he was acting as agent.

Cowls held a judgment against Gibbon, which was a lien on his farm. Hopkins, a defendant in this suit, purchased this judgment, and, by an arrangement with Parvin, for whom Gibbon acted as agent, obtained one of the lots which Palmer had conveyed to Parvin, by guarantying and undertaking to pay two of Parvin's notes of $500 each, held by Sheller as agent for Gibbon's creditors. This lot was conveyed to Cowls in part payment for the judgment against Gibbon. Subsequently, Hopkins purchased the farm at sheriff's sale.

April 30, 1862, plaintiffs recovered judgment against the firm of Gibbon & Co. for $1,951.94 with interest, at 10 per centum per annum. By *scire facias* the individual

property of the partners was made liable on this judgment.

Plaintiffs seek, by this proceeding, to subject to their judgment the lots which Parvin received in payment for the goods, and that have not been conveyed by him, as well as all the notes and property received by Sheller, which have not been converted into money and paid to the creditors of Gibbon, and the amount due from Hopkins on account of his guarantee of Parvin's notes.

The case was submitted to the District Court in November, 1865, upon an agreement that it should be decided in vacation, and January 15, 1867, a decree was filed.

By this decree Sheller is required to deliver to a receiver " all property, notes, moneys and credits " in his hands, and received from Gibbon, or Gibbon & Co., and all notes, accounts and property " heretofore held by him as collateral security for Rindskopf Bros. & Co., and other creditors of G. W. Gibbon & Co." Sheller is also ordered to pay to the receiver $1,500, received on Parvin's notes and applied by him to the payment of his claim against Gibbon. In case payment thereof was not made in thirty days after the rendition of the decree, the order is to have the effect of a judgment for the amount of $1,500 in favor of plaintiffs. Judgment is rendered against Hopkins for $1,270, on account of the notes to Parvin guaranteed by him. The decree also orders the lots owned by Parvin, namely, lots 2, 9, 10, 11, 12 and 13 in outlot 3 in the town of Chariton, to be sold, and the proceeds applied to the payment, *pro tanto*, of plaintiffs' judgment.

We may remark right here that the relief adjudged to plaintiffs, is certainly most ample.

They recover judgments for $2,770 against the two defendants, Hopkins and Sheller, and at the same time are to have the benefit of the proceeds of the lots which,

the only evidence concerning their value shows, were worth in 1862, $1,125, besides having in the hands of a receiver for their benefit an uncertain amount of notes and book accounts. Without including the value of the notes and book accounts, they are likely to realize something like $3,895, on their judgment against Gibbon, which, with the interest added to the date of the decree, amounted only to $2,870. This extraordinary relief, it may also be remarked, is asked for and given in this proceeding, which, as the grounds for the interference of equity, charges that the creditors who obtained security defrauded plaintiffs by an arrangement with Gibbon & Co., whereby the property of the firm was used for the payment of their claims, to the exclusion of other creditors. It is a forcible illustration of the moral of the familiar fable, that, in the application of the rules of justice, a man will arrive at very different conclusions in a case where his ox is gored, from what he would, in one where his neighbor's ox suffers from his own unruly bull.

1. Plaintiffs claim that the chattel mortgages to Rindskopf Brothers & Co., and the surrender of collaterals to Sheller for their benefit and that of the other creditors, were fraudulent, and as to them, were void, because the transactions were in the nature of an assignment, preferring these creditors to the exclusion of plaintiffs and others.

2. That the sale of the stock of goods to Parvin was fraudulent, inasmuch as it was designed to hinder and delay creditors.

3. That the purchase of the farm by Hopkins was made for Gibbon's benefit, with his money, and Hopkins thereby acquired the property under a secret trust for Gibbon.

4. That the notes guaranteed by Hopkins, and executed by Parvin in payment for the stock of goods, should be

made subject to plaintiffs' judgment, as well as all other property in the hands of Sheller.

5. That Gibbon & Co., and Gibbon, owed Sheller nothing, and that therefore the money applied by Sheller, as he claims, in payment of his own debt against Gibbon, was a fraud against plaintiffs, and that Sheller ought to be held liable to them for the amount thereof.

Without entering into any discussion of the evidence, we simply announce the conclusions at which we arrive upon the above points made by plaintiffs, after a very careful consideration of the evidence.

I. We hold that the transactions whereby property and choses in action were given by E. K. Gibbon & Co.

1. ASSIGNMENT FOR BENEFIT OF CREDITORS: preferences. to secure the debts owing by them to Rindskopf Brothers & Co., Ziller & Freidman, R. W. Booth & Co., M. E. Reeves & Co., and Sheller, were in good faith, certainly not with fraudulent intent on the part of the creditors, and in fact no such intent on the part of Gibbon is established by the evidence. Neither can these transactions be considered in the nature of a general assignment, and void because certain creditors are thereby preferred. A debtor, in insolvent circumstances, doubtless, has the right to make payment of the claims of part of his creditors to the exclusion of others, or to secure the claims of part without providing that other creditors shall participate in the benefits of the security. All his property may be given in payment or security to one of his creditors, and the transaction will not be considered fraudulent or void because in contravention of the provision of chapter 77 of the Revision, which requires all general assignments made in contemplation of insolvency, to be for the benefit of all the creditors of the insolvent. *Fromme* v. *Jones*, 13 Iowa, 474; *Sampson & Powers* v. *Arnold*, 19 id. 481.

II. We are of the opinion that the sale of the stock of

Davis & Co. v. Gibbon.

goods by Gibbon to Parvin was fraudulent as to cred-

**2. FRAUDU-LENT CONVEY-ANCE: proceeds may be subjected.** itors of Gibbon & Co., but there is no evidence whatever that any of the creditors of Gibbon, or Gibbon & Co., who are defendants in this suit, in any manner participated in that fraud. The notes given in payment for the goods by Parvin, and the lots given in payment by Palmer to Parvin for the same property, ought to be applied in payment of Gibbon & Co.'s debts. Inasmuch as the property, which was the subject of the fraudulent sale, cannot be reached, we think it is proper to hold the proceeds of the same subject to the payment of these debts. But it appears that the notes given by Parvin to Gibbon have been given by him as security to his creditors, who are defendants herein, and others intended to be secured, and were held by Sheller for that purpose. We gather from the record that they have probably passed into the hands of a receiver under an order of the court below. We are of the opinion that these creditors have a right and equity to these notes superior to the claim acquired by plaintiffs by the proceedings in this suit.

III. We find no evidence to sustain the allegations of fraud on the part of Hopkins, in the purchase of Gibbon's farm.

IV. We hold that the notes of Parvin, guaranteed by Hopkins, and the other notes, accounts and property in Sheller's hands, should be first applied to the payment of the debts of the several creditors of Gibbon & Co., and Gibbon, intended to be secured, viz.: Rindskopf Bros. & Co, Ziller & Freidman, Booth & Co., Reeves & Co., and also the claim of Sheller, in case it be established as herein after directed. We are unable to determine clearly what specific property was intended for the security or payment of the particular claims of each of the above named creditors, neither are we able

Davis & Co. v. Gibbon.

to determine satisfactorily, whether Gibbon was, in fact, indebted to Sheller, or the amount of his indebtedness. If such indebtedness, in fact, existed, Sheller had the right to apply the money received of Parvin, as he did, in payment of his claim against Gibbons or Gibbon & Co., and he has a right to his equitable proportion of the balance of the property, which was transferred to him for securing the creditors of Gibbon & Co., he being among the number.

The notes, book accounts and other property transferred to Sheller by Gibbon & Co., for securing or paying the creditors above named, should be applied for that purpose, each creditor to receive the proceeds of the specific property intended to be applied to his claim. Any surplus, remaining after the payment of his claim, should be applied to the debt of Davis & Co., plaintiffs.

In case it should be found that the property was transferred to Sheller to pay all of the claims generally, then only the surplus to be paid to plaintiffs, after all the other debts are paid. These facts, as well as the amount of the indebtedness, if any, from Gibbon & Co. to Sheller, must be determined upon a new trial. In case no indebtedness is found to Sheller, of course he will be allowed no part of the proceeds of said property.

The lots in the town of Chariton attached in this proceeding, the title of which is in Parvin, should be subject to the debt of Gibbon & Co. to plaintiffs.

The cause is reversed and remanded, with directions that a new trial be had upon the question of Gibbon or Gibbon & Co's indebtedness to Sheller, and the further question as to the application of specific property upon the respective claims of the different creditors. The other questions in the case, being determined by this decree, will not be retried.

The court will provide for the appointment of a

receiver who will give security in an amount to be determined by the court below, and who will receive said property and convert the same into money and apply the proceeds in payment of the several creditors, in the manner to be determined by the decree, which will also direct the sale of said lots, and the application of the proceeds thereof as herein directed. In all respects the decree of the District Court will conform to this opinion.

Reversed.

### JULY 23, 1868.

A petition for rehearing being filed, and considered *per curiam*, the opinion in this case is modified to this extent: " The lots in the town of Chariton, attached in this proceeding, the title to which is in Parvin, should be subject to the debt of Gibbon & Co. to plaintiffs," subject, however, to any right or equity which the holders of the notes of Parvin may have, to subject the same to the payment of said notes by virtue of a vendor's lien, or other equity pertaining thereto, and in no event shall Parvin be liable for the payment of his notes, except for such (if any) balance remaining due thereon, over and above the amount realized upon the sale of said lots under the vendor's lien or otherwise. The petition for a rehearing is overruled.