# KNADLER v. SHARP.

1. **Parties:** IN ACTION ON ACCOUNT. An assignee of an open account may maintain an action thereon in his own name.

2. **Champerty:** ON WHAT PREDICATED. Champerty cannot be predicated on the assignment of an account or note, though the assignee agrees to pay to the assignor, as the consideration for the assignment, the net proceeds realized from the action.

3. **Covenants:** AGAINST INCUMBRANCES. A covenant against incumbrances so runs with the land as that a remote grantee may recover for the amount paid by him to remove the incumbrance.

4. —— That the grantor acquired his title through foreclosure of a mortgage, to which the incumbrance removed by such grantee was junior; that the holder of such incumbrance (who was not made a party to the foreclosure proceeding) could avail himself thereof only by redeeming from the foreclosure sale, which would require, in the present case, a sum greater than the amount of the purchase-money paid by such grantee, would not affect his right to recover the amount paid by him in satisfaction of the incumbrance

*Appeal from Polk Circuit Court.*

THURSDAY, MARCH 20.

ACTION upon a covenant against incumbrances. No question arises upon the pleadings, under which the following facts, stated as concisely as practicable, were developed. Prior to June, 1857, J. M. Griffiths was the owner of fifty-one lots in Des Moines. On the 25th day of June, 1857, and 18th day of November, 1858, a deed of trust and mortgage were executed thereon by Griffiths to secure the payment to defendant Sharp of a sum of money, which on the date of the foreclosure thereof, September 11, 1860, amounted to $10.005, bearing ten per cent interest. On the 27th of June, 1859, and before the foreclosure suit was commenced, a judgment was rendered in the Polk district court against Griffith and in favor of one Rawson for $865, bearing ten per cent interest. Rawson was not made a party to the foreclosure, though his judg-

ment was a lien on the lots. Afterward the lots were sold under the foreclosure judgment to this defendant, Solomon L. Sharp, and a deed therefor was made to him September 26, 1862.

After Sharp thus became the owner he sold some of the lots to the plaintiff Knadler, and severally also to twenty-two others, for considerations uniformly less than his bid, and conveyed the same severally to the purchasers with covenants of general warranty and against incumbrances. M. D. McHenry, Esq., acted as the agent and attorney for Sharp, who was then and still is a non-resident, in procuring the lien on the lots, the foreclosure judgment and sale thereunder, in purchasing the lots at the sale, and in the sale of them to the several purchasers; he also acted as such agent in collecting the deferred payments on the lots sold, and in paying the taxes on all the lots, some of which remain unsold.

An execution had been issued upon the judgment in favor of Rawson against Griffiths, and some part thereof had been realized, when B. F. Allen became the assignee of it. Afterward, and on the 12th day of April, 1869, another execution was issued on the judgment, and was levied upon all the lots, and they were advertised for sale on the 28th day of May, 1869. Allen refused to permit any one except the judgment defendants to pay off the judgment, and was proceeding to have the lots sold under it, when this plaintiff and the twenty-two other purchasers brought their suit in equity against Allen to enjoin the sale and for an order that they be permitted to pay off the judgment and quiet their title. Of this action in equity McHenry, as the agent of Sharp, had full and timely notice. Upon the final hearing of that case the plaintiffs therein were allowed to pay off the Rawson judgment to Allen, and the sale of the lots under it was enjoined. Sharp was notified of this judgment and refused to pay it. The said plaintiffs therein then severally paid, toward the satisfaction of said judgment, and the costs incurred, the proportion which the consideration paid by each plaintiff to Sharp for his lot or lots, bore to the aggregate consideration paid by all. The plaintiffs then sever-

ally made out an account against Sharp, like the following, except the difference in the lots, names, and amounts: "Solomon L. Sharp, to L. S. Goodrell, Dr. To amount due on breach of covenant of warranty on sale of lot 18 block L, in, etc., being amount paid on Rawson judgment and expenses, $11.05." And assigned the same as follows: "For value received I hereby assign the above claim to Jacob Knadler." The assignee paid nothing for the assignment, but gave his obligation as follows: "In consideration of the assignment to me by L. S. Goodrell of an account for $11.05, I agree to pay him when realized, the amount I collect, less costs and expenses." Each of these was duly signed.

The plaintiff, in his petition, had originally twenty-three counts (three were afterward withdrawn), one upon his own claim, and one upon each claim or account assigned him as aforesaid. The answer contained nine counts and denied the plaintiff's claims, etc.; denied that the plaintiff was owner of any of the assigned accounts and averred the facts as above, on which he claimed that the plaintiff was not the real party in interest; averred that plaintiff and his assignors paid voluntarily and not of compulsion; that by their suit in equity they had elected to redeem, and did so voluntarily; that the holder of the Rawson judgment, or any purchaser of the lots under it would be required, before disturbing the title of plaintiff and his assignors, to redeem the lots from the mortgage foreclosure sale, and to do so would require the payment of more on each lot than was paid to defendant therefor. The defendant also makes these latter averments the basis of a cross-action for the difference between the amount he received for the lots and the amount required to redeem them. There was a jury trial and verdict and judgment for plaintiff for $1,101.19, the amount with interest paid by him and his assignors upon the Rawson judgment to Allen. The defendant appeals.

*M. D. McHenry* and *Polk & Goode* for the appellant, cited Rawle on Covenants, 344, 380, 384; 4 Kent's Com. 528; *Dimmick* v. *Lockwood,* 10 Wend. 142, as to the covenants,

and *Boardman & Brown* v. *Thompson*, 25 Iowa, 487; *Mc-Donald* v. *The C. & N. W. R. R. Co.*, 29 id. 170, as to the question of champerty.

*Nourse & Kauffman* for the appellee.

COLE, J. — I. The first point made by the counsel for appellant is, that the plaintiff is not the real party in interest, and cannot therefore maintain the action; and further,

1. PARTIES: champerty, etc. that the facts shown in the case respecting the transfer of the claims of others to plaintiff constitute champerty and will defeat the entire action. Without controverting the able and forcible argument at bar by the senior counsel for appellant, or undertaking to determine the question upon the principles of the common law, we turn our attention to the statutes of our own State bearing upon it. It is enacted by Revision, section 1799: "An open account of sums of money due on contract may be assigned, and the assignee will have the right of action in his own name, but subject to the same defenses and set-offs, as the instruments mentioned in the preceding section." These are any defenses or set-offs legal or equitable, which the debtor in the account may have against any assignor thereof before suit is commenced thereon. To give effect to this statute, we must hold that the assignment of an open account for money due on contract, passes to the assignee the legal title to the account assigned, just as the assignment of a negotiable note, under the statute of Anne, passes the legal title to the assignee of it. And it must be conceded that champerty could not be predicated upon the assignment of such a note and an action thereon, although the assignee gave, as the only consideration for it, his obligation to pay the net proceeds of the action. The reason is, that to assign such a note is lawful, and the right to bring the action results from the assignment regardless of the intent of the parties to it. Under our statute the same sanction is given, and the same result follows the assignment of an open account for money due on contract.

It is also provided by Revision, section 2757: "Every action must be prosecuted in the name of the real party in interest, except as provided in the next section." This language was first construed, as found in the Code of 1851, section 1676, to mean the party having the legal title or interest. *Farwell* v. *Tyler*, 5 Iowa, 535. But, afterward, it was held to mean the party having the beneficial interest, as contradistinguished from the mere holder of the legal title. *Conyngham* v. *Smith*, 16 Iowa, 471. And subsequently it was held that the party holding the *legal title* of a note or instrument may sue on it though he be an agent or trustee, and liable to account to another for the proceeds of the recovery, but he is open in such cases to any defense which exists against the party beneficially interested; or, the party beneficially interested, though he may not have the legal title, may sue in his own name. *Cottle* v. *Cole*, 20 Iowa, 481. The same doctrine was again affirmed in *Rice* v. *Savery*, 22 id. 470. It follows, therefore, that the court did not err in holding that the plaintiff might recover upon all the claims as the proper party to the action, and that the contract of assignment to him and his agreement to pay over the net proceeds did not constitute champerty. The effect of such assignment and action by one was to relieve the defendant from twenty actions and their accumulated costs.

II. Some of the persons who made and assigned the open accounts upon which the plaintiff sues, were the remote grantees of the defendant Sharp. It is now 3. COVENANTS: against incumbrances. urged that the covenant against incumbrances is a personal one, and is broken as soon as made, and does not run with the land, and, therefore, that no right of action existed in favor of such assignors. The true rule in such cases doubtless is, that the covenant against incumbrances is broken upon the making of the conveyance, so that the grantee might then maintain an action and recover nominal damages; but such action and recovery would not defeat or prevent another action by that grantee, or by the grantee of that grantee, however remote, when and after

either had been required to discharge the incumbrance in order to protect his title — the breach, as to the amount thus required to be paid, would not occur until the payment, and then, in favor of the party holding the title and making the payment. In this State, the covenant of seizin also runs with the land. *Schofield* v. *The Homestead Co.*, 32 Iowa, 317.

III. Certain instructions were asked by defendant and refused respecting the statute of limitations and the right of redemption. They may have embraced correct legal propositions, but as they were not founded upon any facts in issue or in proof in the case, it was not error to refuse them. The statute of limitations had not fully run, and no question of redemption had in fact arisen.

The defendant also claimed, and asked an instruction accordingly, that since the judgment creditor could only make any title acquired under the execution sale, available by redeeming from the mortgage foreclosure sale, and since it would take more, in each case, to redeem, than the purchase-money and interest, the jury should find for the defendant. This was refused, and properly so, because it ignores the fact that the purchasers had the right to the benefit of their purchases, and not simply to a return of their money and interest. Any expenditure they might be required to make in order to protect their title, not exceeding such purchase-money and interest, they might properly make and demand its return from their grantor, although some other course, which would not protect their title, might be greatly more advantageous to their grantor.

IV. Upon the question of the agency of McHenry there was some conflicting testimony, and the jury must have found that he was the agent of Sharp at the time notice was given to him of the incumbrance and to remove the same. We see no reason for doubting the correctness of the finding in this respect, or of the instructions in regard thereto. The effort to separate the agency as to certain of the lots sold, and to terminate it as to them, while the general agency was continued, is

too narrow to be of practical advantage in a controversy before a jury. It is enough, too, to satisfy the law, that the whole question was fairly submitted to them.

We have not deemed it necessary to set out the instructions at length, but have endeavored to meet, as briefly as possible, the questions made upon them in the discussions of the general propositions submitted and argued by counsel. In our opinion the judgment was right, and is, therefore,

Affirmed.