## LAUB v. TROWBRIDGE, ADM'R.

1. **Estoppel:** CLAIM AGAINST INSOLVENT ESTATE: ACTS OF ADMINISTRA-TOR. Plaintiff was a creditor of defendant's intestate, who died leaving no property except such as was exempt to his widow. Defendant, however, sold some of the widow's property, and carelessly took a note therefor to himself as administrator, on which he afterwards recovered judgment in his own name, as administrator, which he afterwards collected. Afterwards defendant filed a report,—the first record made by him in the case,—showing that the decedent left no property with which to pay debts, and asking to be discharged. Plaintiff, however, knowing of the said judgment in favor of the administrator, appeared by counsel and filed objections to the report, and there was a trial of the issues raised, and judgment was rendered against defendant and the sureties on his bond for the amount of plaintiff's claim against the estate, and this was done upon the ground that defendant, by taking said note and judgment in his own name, misled plaintiff into the expense of employing counsel, etc., in the belief that there were assets of the estate, and that defendant was thereby estopped from denying the existence of assets to the extent of the value of the judgment. But *held* that this conduct did not constitute an estoppel.

*Appeal from Ida Circuit Court.*

TUESDAY, MARCH 15.

THE defendant was appointed administrator of the estate of James Dunham, deceased, on the eleventh day of January, 1875. On the twentieth day of September, 1882, he filed a report as administrator, and asked that it be approved, and that he be discharged. The plaintiff is a creditor of the estate, and he filed objections to the report. The defendant was cited to appear for examination touching his administration of the estate. The examination was had, further pleadings were filed, witnesses were called and examined, and a judgment was rendered against the defendant and the sureties on his bond for the amount of the plaintiff's claim against the estate. Defendant appeals.

*Smith & Cullison*, for appellant.

*Shaw & Kuehnle* and *Rollins & Frink*, for appellee.

ROTHROCK, J.—The circuit court made a written state-ment of the facts found, and the conclusions of law upon which the judgment against the defendant was founded. That part of the statement necessary to be considered is as follows:

"And the court further finds that the said administrator never made and filed an inventory of the property belonging to said estate, and that he never filed any report of his doings therein, other than the one of date September 20, 1882. The court further finds that there is and was no property belonging to said estate, except such as was exempt from execution, and as belonging to the widow of the deceased. But the court finds that the administrator should pay the notes of the plaintiff for the reason, principally, as follows: The court finds that the administrator was negligent in fail-ing to file an inventory and report, and that he carelessly took a note in his name as administrator, and had the same put in judgment in Crawford county in the name of E. J. Trowbridge, administrator; and, there being no records and reports of his doings as administrator of said estate, whereby the plaintiff could ascertain the condition of said estate, and it further appearing that the plaintiff ascertained the exist-ence of the judgment in question, and the payment of same to the administrator by the judgment defendant, and believ-ing therefrom that the administrator had funds in his hands with which he should pay plaintiff's claim, and the plaintiff believing, and, as the court thinks, having reason to believe, that there were funds with which to pay the plaintiff's claim, the plaintiff went to the expense of employing attor-neys at an expense, and at an expense of his own time, to compel the administrator to pay the claim as required of him by law.

"Now, upon the plaintiff causing the defendant to make a report of his doings, and as to the condition of said estate, the court finds that the administrator took a team of horses of the widow, which was hers by virtue of the statute, as

belonging to the widow of the deceased, and sold the said horses, taking a note in the name of E. J. Trowbridge, administrator, for $300, and caused the said note to be put in judgment in the name of E. J. Trowbridge, administrator, and collected said judgment, and paid the same to the widow.

"The court finds that the plaintiff had no knowledge of the interest of the widow in said judgment until after he had been to the trouble and expense in the manner and form as before stated. Wherefore, the court finds, as a matter of law, under the circumstances of this case, as shown in evidence, that the administrator is estopped, so far as the claim of the plaintiff is concerned, from claiming that the $300 and interest received on said judgment does not belong to the estate."

It will be observed that the court held that the defendant was liable on the ground of estoppel. It is apparent that there would be no liability on any other ground, for, if the defendant must pay this claim, it is clear gain to the plaintiff, and a personal loss to the defendant. When Dunham died, this claim against the estate was absolutely worthless. The question to be determined is, did the fact that defendant took the note for the property of the widow in his name as administrator, and collected it as administrator, so mislead the plaintiff that the defendant should be precluded from showing the real facts of the transaction? It is not claimed that the defendant made any personal representation or statement to the plaintiff in regard to the assets of the estate. The plaintiff claims that he was misled by the record of the judgment, showing that the administrator had collected assets of the estate which should be applied to the payment of his claim, and that, relying on that fact, he was induced to change his situation by employing counsel to compel the defendant to pay his claim. What was done by his attorneys to procure the defendant to file the report does not very clearly appear, more than that a citation was issued. The

report as filed, which is the first record in this case, sets forth, in terms which are so plain as to be incapable of being misunderstood, that the decedent left no property except such as was exempt to the widow. It is true, the report did not set forth the reason why the defendant took the note payable to himself as administrator, and took judgment thereon in his name as administrator. But the plaintiff was fully advised by the report that there never had been any assets of the estate with which to pay his claim. He could not after that incur expense, change his situation by litigation, and make such acts the ground of an estoppel, because, if he had made inquiry, he would have learned the real facts. The evidence shows that one of his attorneys knew all about the facts when he employed him. Whether this knowledge should be imputed to the plaintiff we need not determine, because we think that the other established facts in the case do not estop the defendant from showing the real condition of the estate.

It will be observed that the plaintiff's only act, based upon the taking of the note by the defendant, was to employ counsel to collect his debt. He was not induced by any act of the defendant to purchase a claim against the estate. He did not in any manner change his situation, further than to procure the defendant to make a report, and from that time forward he had notice that there were no assets with which to pay his claim. If he had been induced by an examination of the judgment to purchase a claim against the estate, there might be some ground for holding that the defendant should be estopped from showing that the proceeds of the judgment belonged to the widow. It is not shown that because of this judgment, and in reliance thereon, plaintiff refrained or neglected to prosecute his claim against other property, or to avail himself of other means to collect the same. So far as his original claim is concerned, he is in no worse position than he would be if the defendant had not taken and collected the note for the exempt property. The

most that can be claimed from the facts is that the plaintiff, when he ascertained that the note had been taken and judgment rendered in the name of the defendant, conceived the idea that the defendant had made himself liable to pay the debts of the estate, and he employed counsel to collect what was, before that, a worthless claim.

We think that a little attention to the law of estoppel by the acts of the parties will demonstrate that the plaintiff is in no position to be profited by any act of the defendant. It is a fundamental rule of the law of estoppel *in pais*, as expressed in *Lucas v. Hart*, 5 Iowa, 419, that, " the estoppel is allowed to prevent fraud and injustice, and exists wherever a party cannot, in good conscience, gainsay his own acts or assertions." In other words, the acts and admissions of a party operate against him where, in good conscience and honest dealing, he ought not to be permitted to gainsay them. The facts in cases of this kind, to be sufficient to authorize the application of the law of estoppel, always involve bad faith on the part of the party sought to be estopped from showing the truth.

In Bigelow on Estoppel, 543, in speaking of estoppel by conduct, or equitable estoppel, it is said: " In its most common phase, this estoppel is founded on deceit, and has its justification in the duty of courts to prevent the accomplishment of fraud. The same rule applies whether the application of the doctrine be sought in a court of chancery or of law." Applying this fundamental principle to the facts of this case, it strikes the mind at once that the defendant ought not to be compelled to pay this claim. It may be said that he ought not to have taken the note and judgment in his own name as administrator. But there is no evidence that any creditor of the estate was prejudiced thereby, further than that the plaintiff believed that by that act the defendant's mouth was closed, and he could not be permitted to show that there were no assets of the estate, and a claim against the estate which was absolutely worthless had become col-

lectible.     The facts do not authorize the conclusion that justice, good conscience and the prevention of fraud require that the defendant should pay this debt.

REVERSED.