LETTS, FLETCHER & Co., Appellants, v. McMASTER & DRYDEN *et al.*, Appellees.

1. **Partnership:** MORTGAGE: POWER OF ONE PARTNER TO EXECUTE ON FIRM PROPERTY TO CREDITOR. Where one member of a firm, without the knowledge or consent of his copartner, executed a chattel mortgage upon a part only of the property of the firm to secure a partnership indebtedness, and such action was afterwards acquiesced in by the other partner, the latter claiming, and having previously exercised, the same authority, and the chattel mortgagee soon afterwards took possession of the mortgaged property, and proceeded to dispose of the same and to apply the proceeds upon the indebtedness secured by such mortgage, *held*, that the mortgage was valid as against a subsequent attaching creditor of the firm.

2. **Fraudulent Conveyances:** SECRET LIEN: EFFECT ON SUBSEQUENT CONVEYANCE. Some time before the execution of the mortgage above referred to the mortgagee had received a mortgage upon the firm's

property to secure a part of the same indebtedness, but the same was never recorded, and when the mortgage in question was accepted the indebtedness under the former mortgage was included therein, and that mortgage surrendered. *Held*, that, as the mortgagees were claiming nothing by virtue of the former mortgage, the secret character of that lien could not affect the validity of the mortgage last executed.

3. ————: FAILURE OF MORTGAGEE TO TAKE POSSESSION OF PORTION OF PROPERTY. A part of the property included in the above mortgage consisted of forty hogs, which had been purchased by one D., with money borrowed of I., C. & L. for that purpose, under an agreement that they were to be shipped to Sioux City, sold, and the profits divided between said D. and the defendant firm. The hogs having sold for sufficient only to pay the loan, the entire proceeds were paid to I., C. & L. *Held*, that the mortgagees were not accountable for the value of the hogs, and their action was no evidence of fraud.

4. Mortgages: GENERAL ASSIGNMENT: INTENTION OF MORTGAGOR. The defendant firm, being insolvent, executed to one of its creditors a chattel mortgage upon a part of its property to secure a *bona fide* indebtedness, and on the next day executed four other mortgages to creditors of the firm, without their knowledge, upon a part of the same property, and thereafter the mortgagees under the first mortgage took possession of the property and disposed of the same. At the time the first mortgage was given the mortgagors had no thought of giving the four mortgages subsequently executed. *Held*, that the mortgages, being separate in point of time, and not connected by intention or circumstance, they could not be construed as a general assignment with preferences, and, therefore, void.

*Appeal from Monona District Court.*—HON. GEORGE W. WAKEFIELD, Judge.

THURSDAY, OCTOBER 15, 1891.

THE plaintiff brought this action against the defendants to recover sixteen hundred and thirty-four dollars and thirty-five cents on account for merchandise, for which judgment was subsequently rendered. An attachment was sued out, and J. W. Bickford, cashier of the First Ute Bank, was garnished as a supposed debtor of the defendants; and, having answered, issue was joined upon his answer, and upon his motion the case was transferred to the equity docket, and tried as an equity cause, and judgment entered in favor of the garnishee, from which the plaintiff appeals.—*Affirmed.*

*Binford & Snelling* and *McMillan & Kindall,* for appellant.

*Charles MacKenzie,* for appellee.

Given, J.—I. No exceptions were taken to the ruling of the court transferring the case to equity, nor any objections made to trying it as an equity cause when called for trial. We are not called upon to determine whether the transfer was proper or not, and the parties having thus submitted their case as in equity it will be so considered on this appeal.

II. The following, with what is hereafter mentioned, will be a sufficient statement of the facts to show the question involved: On and for some time prior to October 24, 1888, I. C. McMaster and W. H. Dryden were partners in business at Castana, Monona county, Iowa. Their business consisted in keeping a retail store of general merchandise, a grocery store and meat market combined, a slaughterhouse and stock yard, and in buying and selling stock. They transacted businesss through the First Ute Bank and the Dunlap Bank. Mr. Dryden having visited Dunlap and Ute to ascertain the indebtedness of his firm to these banks, and finding it to be larger than he expected, and more than the firm could meet in the usual course of business, and being pressed by the banks for security, did then, October 24, 1888, on behalf of the firm, and without the knowledge or consent of his partner, execute and deliver a chattel mortgage to the appellee. The mortgage is upon all the merchandise, furniture, tools, hay and feed in the store, grocery and meat market, slaughterhouse and stock yard; also eighteen cows, one calf and two three-year-old steers in the slaughterhouse yard, and on forty head of hogs, and one sorrel horse. The mort-

1. Partnership: mortgage: power of one partner to execute on firm property to creditor.

gage was given to secure the payment to the appellee of four promissory notes, two to S. J. Patterson, vice-president of the Ute Bank, dated August 21, 1888, and two to J. W. Bickford, dated August 24, 1888. One of said notes was for thirty-three hundred and ninety-one dollars and fifty-three cents, payable February 21, 1889; one for six hundred and seventy-one dollars and eighty-nine cents, payable February 25, 1889; one for fifteen hundred and seventy-five dollars and sixty-six cents, payable November 3, 1888; and one for one thousand dollars, payable October 27, 1888; all bearing interest at ten per cent. The mortgage was executed at Ute, and after delivery was turned over to Mr. Dryden to carry to Onawa (where he was going), to file it for record. On the following day, October 25, Dryden executed, on behalf of the firm, four other mortgages to creditors of the firm, without their knowledge, on the same merchandise in the store. On that day he handed the five mortgages to the recorder, with directions not to file them until further directed; and on the following day directed the recorder to file the one to the appellee as of October 25, and the others as of the twenty-sixth, and they were so filed and recorded. On October 27, 1888, the appellee took possession of all the property described in the mortgage excepting the forty hogs, eighteen cows, one calf and two steers, and the hay and feed, and proceeded to dispose of the same as authorized by the mortgage, and was so engaged when served with notice of garnishment. After the appellee took possession, certain parts of the merchandise were taken from him by writs of replevin. The property taken and held by the appellee was not sufficient to satisfy the mortgage debt by a considerable sum.

The appellant's first contention is that the mortgage operated as a complete transfer and assignment

of the firm property, and totally destroyed and wound up the business, and, therefore, Dryden had no authority to execute the same without consulting his copartner; wherefore the mortgage is absolutely void. It was not a complete transfer of the property. The appellee did not take complete title to it, but only the right to take, sell and apply as provided in the mortgage. Other creditors had a right to take the property from the appellee by paying the debt secured by this mortgage, as provided in chapter 117, Acts of the Twenty-first General Assembly. No doubt Dryden knew that giving this mortgage would stop their business, but this was no reason why he might not honestly pledge the firm property to secure a firm debt, nor why the appellee might not demand and accept such security. *Loeb v. Pierpoint,* 58 Iowa, 469; *Hunter v. Waynick,* 67 Iowa, 555, are cited as showing want of authority in Dryden to make this mortgage. In the former case one partner undertook to make a general assignment for the benefit of creditors against the objection of the other partner, and, in the other, one partner attempted to sell the entire property and business of the firm without the consent of the other partner. This mortgage did not cover all the property of the firm, and was given to secure a debt, a large part of which was contracted by the absent partner, and giving the mortgage was always afterwards acquiesced in by him. It is not questioned but that Dryden had the usual authority possessed by partners. McMaster testifies that he had authority to execute mortgages to secure firm debts,—an authority which, it will be seen further on, McMaster had previously exercised. We are in no doubt but that Dryden did have authority to execute mortgages for and on behalf of the firm, on its property, to secure firm debts.

III. Appellant's further contention is that the mortgage was executed under a fraudulent combination

**2. FRAUDULENT conveyances: secret lien: effect on subsequent conveyance.** and conspiracy between W. H. Dryden, S. J. Patterson, vice-president, and J. W. Bickford, cashier, and is, therefore, void for fraud. One circumstance relied upon as showing fraud is that the defendant McMaster had a settlement with the appellee in August, 1888, and executed the firm note for thirty-three hundred dollars, the balance found to be due to the appellee, and a mortgage on the firm's merchandise to secure the note. This mortgage was not placed on record, and upon giving the mortgage in question this debt of thirty-three hundred dollars was included therein, and the unrecorded mortgage surrendered. If the appellee was claiming anything under this unrecorded mortgage, then what is said with respect to giving a secret lien on property, and the authorities cited, would be in point; but the appellee is claiming nothing by virtue of that mortgage, and the situation between the parties is the same as if that mortgage had never been given. By its surrender, the appellee waived all rights under it. We may add that it does not appear that the mortgage was withheld from record in pursuance of any agreement, nor at the solicitation of the mortgagor, as in *Standard Paper Co. v. Freie Presse Co.* 30 N. W. Rep. (Wis.), relied upon by appellant.

IV. In the settlement October 24, 1888, a draft that day given by McMaster & Dryden to S. J. **3. ——: failure of mortgagee to take possession of portion of property.** Patterson for seven hundred and ninety-three dollars, on the First Ute Bank, was accepted and paid, and included in the two notes that the defendant executed to the appellee. This draft was to Patterson, as cashier of the Bank of Dunlap, and in payment of a note held by that bank. The appellant contends that this note was the individual debt of McMaster, and not the debt of the firm. The testimony as to the origin of this debt is confused, but we think the weight of the testi-

mony is in favor of the conclusion that, whatever the origin may have been, the note paid by this draft was the note of McMaster & Dryden. If it were otherwise the appellant would not be prejudiced, as it is very clear that the property which came into the hands of the appellee was insufficient to satisfy the other part of the mortgage debt.

Another circumstance relied upon as showing fraud is that the appellee did not take possession of all the property described in the mortgage. The forty hogs had been purchased by one W. A. Dryden with money furnished by Ingerson, Carrabine & Lye, of Sioux City, for that purpose, and were shipped to Sioux City, sold, and the proceeds turned over to the party furnishing the money. They were purchased and shipped by W. A. Dryden under an agreement that he was to have half the profits, and McMaster & Dryden the other half. It does not appear that there were any profits, or that anything ever came to the appellee from the transaction. There is nothing to show what became of the twenty-one head of cattle, hay and feed at the stock yard, and the horse. It does appear, however, that no part of this property ever came into the hands of the appellee. We think the testimony fails to show fraud in the taking of this mortgage, and that the appellee is only accountable for the property that actually came into his hands It is a well-settled rule that liability will never be presumed against a garnishee, but must be affirmatively shown.

V. The appellant's further and last contention is that the execution of the mortgage in question "was a part of a transaction which, taken as a whole, amounts to a general assignment for the benefit of creditors, and because of preference is void." It is not claimed that this mortgage taken alone would constitute such an assignment, but that it and the four mortgages

4. Mortgages: general assignment: intention of mortgagor.

executed on the following day were one transaction, and, taken together, constitute such an assignment. In determining whether a disposition of property constitutes such a general assignment, the intention of the parties will control. *Kohn v. Clement*, 58 Iowa, 589; *Cadwell's Bank v. Crittenden*, 66 Iowa, 237. Our inquiry is as to the intention of the parties at the time of executing the mortgage to the appellee. There is some testimony as to statements made by Dryden some days after these transactions, to the effect that he had told Patterson on the twenty-fourth that he wanted to make such disposition of the firm property as that the creditors could share *pro rata.* This is denied by Patterson, and is inconsistent with what was then done; for surely Dryden knew that the mortgage would not be such a disposition of the property. We are satisfied that Dryden had no thought of giving the four mortgages executed on the twenty-fifth at the time he executed the one to the appellee. His action did not indicate any other intention than to secure the particular creditors to whom he made the mortgages. Whatever his intentions may have been on the twenty-fifth, we are satisfied that the mortgage was given to the appellee in good faith, to secure an honest debt, and as an independent transaction from the execution of the other mortgages. They were separate in point of time, and not connected by intention or circumstance. The appellee had a right to demand and receive, and Dryden to give, the mortgage in question; and we think it was given and received in good faith, and that the appellee is entitled to the benefit of it. See *Davis v. Gibson*, 24 Iowa, 257. As the proceeds arising from the mortgaged property are not in excess of the debts secured by the mortgage, the appellee was properly discharged.

The judgment of the district court is AFFIRMED.