J. J. SNOUFFER, Appellant, v. DAN R. KINLEY, Sheriff.

**Fraudulent Conveyance: FAILURE TO RECORD.** A chattel mortgage was given plaintiff to protect him against having signed a note with mortgagor. Plaintiff paid this note and then took a bill of sale upon the mortgaged stock in lieu of said mortgage. The mortgage was not recorded for about two years in order that the credit of the mortgagor should not suffer. *Held*, that as against those who became creditors in ignorance of the mortgage, the transaction is fraudulent.

**EVIDENCE.** Where the mortgagee says that he holds an unrecorded mortgage to indemnify him for being surety, cautions the hearer to say nothing about it, and says that he will not use the mortgage unless something happens to the note on which he is surety, a finding that the mortgage was withheld from record in order that the credit of the mortgagor should not be injured, is supported by the evidence.

*Appeal from Linn District Court.*—HON. JAMES D. GIFFIN, Judge.

MONDAY, OCTOBER 21, 1895.

Prior to the first of June, 1891, W. H. Thompson was the owner of a stock of jewelry at Cedar Rapids, Iowa. On that day he borrowed of the City National Bank one thousand dollars, for which he gave his note with the plaintiff as surety; and Thompson at the same time made to plaintiff a mortgage on the stock of jewelry to indemnify him against loss. This mortgage was not placed of record until May 5, 1893. The note

to the bank was, from time to time, renewed with plaintiff as surety, the mortgage remaining for his protection. While the mortgage was so held, and before it was placed of record, Stein & Elbogan Company, without knowledge of the mortgage, sold to Thompson goods on credit, for which about May 5, 1893, there was a balance due of one hundred and sixty-nine dollars and twenty-eight cents. On the ninth day of May, 1893, by a written bill of sale, Thompson assigned to plaintiff his entire stock of goods for the averred consideration of plaintiff having paid the bank note and assumed the payment of some seven hundred and eighty dollars of rent, secured by a landlord's lien on the stock of goods. Plaintiff, at the time of the assignment, took possession of the goods. About May 20, 1893, Stein & Elbogan Company commenced a suit aided by attachment, and seized the stock of goods through the defendant sheriff. This action is to recover the possession or value of the goods by the plaintiff as owner under his purchase. The defendant answered, setting up the fact as to the mortgage, and its being withheld from record; the extending of credit without knowledge of the mortgagees, averring the transaction to have been fraudulent, and that, if a sale was made, the consideration therefor was the same as that of the mortgage, and that the bill of sale was made in payment of, or in lieu of, the chattel mortgage, and with the intent to hinder and delay the creditors of Thompson. The issues were tried to a jury, that returned a verdict for the defendant, and the plaintiff appealed.—*Affirmed.*

*Jamison & Burr* for appellant.

*Charles D. Harrison* for appellee.

Granger, J.—Appellant complains of the fourth, fifth and sixth instructions given by the court. The

fourth instruction no more than states that if the charge of fraud, as made, is not established, the jury should find for the plaintiff. The fifth instruction states the facts relied upon showing fraud as to the chattel mortgage, and the withholding of it from record, by an agreement between plaintiff and Thompson, to protect the credit of Thompson. The sixth instruction is as follows: "(6) And you are instructed that if you believe from the evidence taken in this case that when the bill of sale was executed the consideration therefor was the same consideration for which the chattel mortgage was held and given, and it was to satisfy said mortgage, and that said chattel mortgage was held from record from June 1, 1891, its date, till May 5, 1893, the date when it was recorded, under an agreement or understanding between plaintiff and Thompson that it would be so held from record for the benefit of the credit of Thompson, then it would, in law, be a fraudulent sale, and plaintiff could not recover herein, and your verdict would then be for defendant." The jury returned a special finding that plaintiff refrained from recording the mortgage for the purpose of not injuring the credit of Thompson. The thought of appellant, in his criticism of the instruction, is that there is no evidence to show that the consideration for the execution of the mortgage and that of the bill of sale are the same, and he says: "It will be observed that these instructions are based upon the theory that it would be sufficient to establish the consideration for the mortgage and the consideration for the bill of sale to be one and the same if it was shown that the debt paid and discharged was the same debt for which the chattel mortgage was given to indemnify Snouffer from paying." This thought of appellant underlies the entire controversy on this appeal. It seems to us that a few thoughts should be conclusive of this

proposition. What was the consideration for the mortgage? It was the obligation plaintiff assumed for the payment of the note. Barring the fact of the payment of the rent, what was the consideration for the sale? It was the discharge of the obligation. The one was given for the undertaking, and the other for the performance. The taking of the bill of sale was substituted for, or put in place of, the enforcement or foreclosure of the mortgage. The plaintiff, as a witness, said: "Q. Now, then, they inquired about the amount of this debt. When was it you paid the debt to the bank and took up the note? A. Between the time of the recording of the mortgage and the date of the bill of sale. Q. At the time you recorded the mortgage you hadn't paid it? A. No, sir. I paid it between that and the date of the recording of the bill of sale. The note was due, and came to me to be signed right after the mortgage was recorded and I refused to do that, and made up my mind that it was about time to close it, and that I would either foreclose the mortgage or take the goods by a bill of sale,—buy the goods; and I went to him and told him what I was going to do. (And I went down to Mr. Bever and took up the note. My name was on it with his. I don't think I gave it to Mr. Thompson, for he would have no business with it unless I took my name off of it. But it is either destroyed or in the waste basket). I went to Mr. Thompson, and he agreed to do this, and I paid the note. I either had to do that or foreclose the mortgage, and didn't think the goods were worth it." It will be seen that he first paid the note, and then, in lieu of a foreclosure of the mortgage, he took the bill of sale. He took the bill of sale because he had paid the note. Had he foreclosed the mortgage, it would have been because he had paid the note. The relation between the promise and the fulfillment of the

promise is so close that, as considerations for the respective instruments in view of the purposes in their execution, they are, in legal effect, the same. We think the court might, in view of the record, have so instructed the jury. It seems to have been only the purpose of the plaintiff to take the bill of sale in place of the mortgage, but also that of Thompson. He was asked "whether the bill of sale was executed in satisfaction of the mortgage." He answered, "To the best of my knowledge and belief, it was." We can hardly see how a fact can be more directly or conclusively established. The instructions are not erroneous.

II. The special finding that the mortgage was withheld from the record for the purpose of not injuring the credit of Thompson has full support in the evidence. In 1892, plaintiff's particular attention was called to the fact that the mortgage was not recorded, and he was asked if Thompson was in trouble. He answered: "I signed a note with him at the bank as surety, and took this from him; and don't say anything about it." It also appears that plaintiff told Thompson that he would not use the mortgage to hurt him, unless something happened to the note in the bank. This was about the time the mortgage was executed. This special finding, under the rule of the instructions, brings the case, as to the mortgage being fraudulent, within the rule of *Goll & Frank Co. v. Miller*, 87 Iowa, 426 (54 N. W. Rep. 443); because of the agreement not to record the mortgage; and it is unlike *Letts-Fletcher Co. v. McMaster*, 83 Iowa, 449 (49 N. W. Rep. 1035); *Burt v. Gamble*, Michigan, 57 N. W. Rep. 261; and *Mull v. Dooley*, 89 Iowa, 312 (56 N. W. Rep. 513). The court seems to have disregarded the matter of a claimed additional consideration to pay the rent, probably because of the condition of the evidence in

regard to it; but, in any event, there is no assignment of error under which we are called upon to consider it. No one seemed to think it important in the submission of the case below. Our considerations cover all important points discussed, and the judgment will stand.—*Affirmed.*