## IN RE ESTATE OF WILLIAM E. ENSIGN.

**DESCENT AND DISTRIBUTION:** Surviving Spouse—Life Insur-
1 ance. Proceeds of life insurance, payable *to the estate* of an
intestate, issueless deceased, belong wholly to the surviving
wife, in the absence of an agreement or assignment thereof to
the contrary. (Sections 1805, 3313, Code, 1897; Section 3379,
Code Supplement, 1913.)

**DESCENT AND DISTRIBUTION:** Surviving Spouse—Life Insur-
2 ance—Estoppel. The surviving wife of an intestate, issueless
husband, is not estopped to claim the *entire* proceeds of the life
insurance left by her husband, by the fact that as administra-
trix she repeatedly treated said proceeds as a part of the es-
tate, when other distributees have not in any wise changed
their position, and the wife has not secured any advantage
thereby.

*Appeal from Cerro Gordo District Court.*—C. H. KELLEY,
Judge.

### DECEMBER 10, 1917.

THE surviving widow of deceased filed an application
in the clerk's office praying an order authorizing herself
as administratrix to distribute to herself the proceeds of
certain life insurance on the life of her husband. The
lower court overruled a demurrer to the resistance filed
thereto by the only heir at law of deceased, and from a
judgment thereon dismissing said application the widow
appeals to this court.—*Reversed and remanded.*

*Frank W. Chambers* and *Blythe, Markley, Rule &
Smith,* for appellant.

*Scnneff, Bliss & Witwer,* for appellee.

STEVENS, J.—I. William E. Ensign
1. DESCENT AND
DISTRIBUTION: died intestate October 29, 1915, leaving sur-
surviving
spouse: life viving him May Ensign, his widow, and
insurance.
Franc Adele Ensign, a sister, as his sole and

only heir at law. The estate, which consisted largely of real property, appears to have been valued at about $100,000. At the time of his death, he held a policy for $5,000 in the Northwestern Mutual Life Insurance Company, payable to his estate. The controversy in this case involves the distribution of the proceeds of this policy. May Ensign, his surviving widow, was appointed administratrix of her husband's estate. In due time, the administratrix filed an inventory of the estate, in which she listed the above policy of insurance as a part of the assets thereof. On November 8, 1915, she filed in the office of the clerk of the district court of Cerro Gordo County an application for waiver of appraisement of certain goods, and for other orders, and therein recited that the debts and expenses of administration would be approximately $2,500, and again listed, among other assets of said estate, the said policy of insurance. On November 13, 1915, a stipulation was entered into between the surviving widow and the sister of her deceased husband, providing for a division of the real estate belonging to said estate. No mention appears to have been made in said stipulation of the insurance policy in question. On November 19, 1915, administratrix filed an application for a widow's allowance in the sum of $2,000, in which she again referred to the life insurance policy as a part of said estate. Later, by agreement of parties, and on December 11, 1915, she was allowed by the court, in accordance with the stipulation previously filed, the sum of $1,800 for her year's support. On December 21, 1916, the surviving widow filed in the district court of Cerro Gordo County, Iowa, an application for an order authorizing her, as administratrix, to pay to herself the proceeds of the life insurance policy. To this application Franc Adele Ensign filed resistance, reciting in full the inventory and other applications, reports and stipulations and orders of the court hereinbefore referred to, and averring that by reason thereof

applicant was estopped from having or claiming the proceeds of said insurance policy, and praying that the application therefor be denied. A demurrer to said resistance was filed by the applicant, which demurrer was overruled by the court; the applicant elected to stand on her demurrer; whereupon her application was dismissed. The appeal is from the ruling and judgment of the court upon the demurrer.

Two questions are argued by counsel upon this appeal, as follows: (a) Do the proceeds of life insurance made payable to the estate of deceased, in the absence of an agreement or assignment thereof to the contrary, inure to the separate use of the widow; or (b) if so, is the applicant in this case estopped to claim the same, by reason of the matters above set out and hereinafter more fully referred to?

The statutes applicable to the first question presented are as follows:

Section 1805, Code, 1897:

"*A policy of insurance on the life of an individual, in the absence of an agreement or assignment to the contrary, shall inure to the separate use of the husband or wife and children of said individual, independently of his [or her] creditors. [;and] The proceeds of an endowment policy payable to the assured on attaining a certain age shall be exempt from liability for any of his [or her] debts.* Any benefit or indemnity paid under an accident policy shall be exempt to the assured, or in case of his death to the husband or wife and children of the assured, from his debts. The avails of all policies of life or accident insurance payable to the surviving widow shall be exempt from liability for all debts of such beneficiary contracted prior to the death of the assured, but the amount thus exempted shall not exceed five thousand dollars."

Section 3313, Code of 1897:

"*The avails of any life* or accident *insurance,* or other sum of money made payable by any mutual aid or benevolent society upon the death or disability of a member thereof, *are not subject to the debts of the deceased, except by special contract or arrangement,* and [*but*] *shall* [*, in other respects,*] *be disposed of like other property left by the deceased.* When a wrongful act produces death, damages recovered therefor shall be disposed of as personal property belonging to the estate of the deceased, but if the deceased leaves a husband, wife, child or parent, it shall not be liable for the payment of debts. The words 'heirs,' or 'legal heirs' or other equivalent words used to designate the beneficiaries in any life insurance policy or certificate of membership in any mutual aid or benevolent association, where no contrary intention is expressed in such instrument, shall be construed to include the surviving husband or wife of the insured, and the share of such survivor in the proceeds of such policy or certificate made payable as aforesaid shall be the same as that provided by law for the distribution of the personal property of intestates."

Section 3379, Supplement to the Code, 1913:

"If the intestate leaves no issue, the whole of the estate to the amount of seventy-five hundred dollars, after the payment of the debts and expenses of administration, and one half of all the estate in excess of said seventy-five hundred dollars shall go to the surviving spouse and the other one half of said excess shall go to the parents. If no spouse, the whole shall go to the parents."

The italicized portion of Section 1805, supra, constituted Section 1182 of the Code of 1873. The italicized portion of Section 3313, supra, indicates the provisions of Section 1330 of the Code of 1851, and Section 2372 of the Code of 1873.

This court, in *Rhode v. Bank,* 52 Iowa 375, construed

and harmonized Section 2372 of the Code of 1873, which is indicated by the italicized portion of Section 3313, supra, and Section 1182 of the Code of 1873, and held that the proceeds of an insurance policy payable to the insured, his executors, administrators or assigns, inured to the benefit of the widow, the court saying:

"The provision was manifestly designed to restrict the distribution of the avails of life insurance to the classes named. We do not infer this merely from the fact that the legislature must be presumed to have had some object. The language used indicates very clearly that the legislature had in view restriction in distribution. The provision is that the policy shall inure to the separate use of, etc. Now these words are not used to cut off creditors. They were cut off before. Separate use, therefore, does not mean a use separate from the creditors. The restriction, then, must have reference to those who might otherwise take as distributees. The provision of Section 2372 of the Code, that the avails of life insurance 'shall in other respects be disposed of like other property left by the deceased,' does not necessarily mean that it shall be distributed to the same class or classes of persons. The avails will, in some sense at least, be disposed of like other property left by the deceased, if distributed by the administrator to the persons entitled thereto under the law governing the distribution. It should be restricted to the classes named in Section 1182, if both or one exists; but if not, it should be distributed according to the general statute for the distribution of property. This construction gives each one of the sections in question a force of its own, and we think does violence to neither."

We have, therefore, to consider only the effect of certain changes in the statute since the decision in *Rhode v. Bank*, supra.

Section 1410 of the Code of 1851 was practically identical with Section 2455 of the Code of 1873 and Section 3379 of the Code of 1897, which was repealed by the thirty-fifth general assembly and Section 3379, Supplement to the Code, 1913, enacted in lieu thereof. The portion of Section 1805, supra, not italicized appears as a part thereof first in the Code of 1897, but the italicized portion of said section has, in substance, been a part of the statute since the Code of 1851. Section 3313 is substantially as it was at the time of the decision in *Rhode v. Bank*, supra, except the portion added thereto, which, so far as material to this controversy, is as follows:

"The words 'heirs' or 'legal heirs' or other equivalent words used to designate the beneficiaries in any life insurance policy or certificate of membership in any mutual aid or benevolent association, where no contrary intention is expressed in such instrument, shall be construed to include the surviving husband or wife of the insured, and the share of such survivor in the proceeds of such policy or certificate made payable as aforesaid shall be the same as that provided by law for the distribution of the personal property of intestates."

It is quite obvious that this addition to the statute was not designed to amend or change Section 1805, but makes the surviving husband or wife an heir to the proceeds of any policy of insurance upon the life of a deceased spouse which, by its terms, is payable to the heirs thereof. Prior to the enactment of this provision of said section, the husband or wife had no interest or share in the proceeds of a policy of life insurance by its terms made payable to the heirs of the insured. The language of the above section providing for the distribution thereof in the same manner as other personal property of intestates cannot be so extended as to include the proceeds of life insurance which, by the provisions of Section 1805, inure to the benefit of the surviving

husband or wife and the children, if any, thereof. The provision of Section 3313 relates only to the proceeds of a policy the beneficiaries of which are the heirs at law of the insured, while Section 1805 applies where the policy designates no particular beneficiary, but makes same payable to the executors, administrators or to the estate of deceased.

But it is contended by counsel for appellee that the designation in said policy of his estate as beneficiary was in effect "an agreement or assignment to the contrary," within the meaning of that term as used in Section 1805, Code, 1897. The thirty-fifth general assembly by specific provision repealed Section 3379 of the Code of 1897 and enacted the present section in lieu thereof. No reference was made in the act of the thirty-fifth general assembly to Section 1805, and if same, or any part thereof, was amended or repealed thereby, it was by implication only. Section 3379, as it appeared in the statute at the time this controversy arose, is substantially the same as Section 2455 of the Code of 1873.

No agreement can be implied, from the designation of his estate as beneficiary, that the proceeds of said insurance should be disposed of according to said Section 3379, and it is in no sense equivalent to an assignment. It is true that said fund became a part of the estate of deceased and was properly collected by the administratrix and must be distributed by her according to law. The only question is whether same is to be divided equally between the surviving widow and the sister of deceased, or whether the whole thereof shall, under Section 1805, inure to the benefit of the surviving widow. Repeals by implication are not favored. Besides, it is apparent that the legislature intended to repeal only Section 3379 as it appeared in the Code of 1897 and re-enact the same with the additional provision in favor of the surviving spouse, and had no reference, directly or in-

directly, to Section 1805. Unless said latter section has been repealed, we see no reason why the distribution of the proceeds of the policy in question should not be made in accordance therewith. The proceeds of a policy of life insurance which inure to the benefit of the surviving spouse are to be distributed by the administrator or executor according to the provisions of Section 1805, and other property of the estate according to the provisions of Section 3379, Supplement to the Code, 1913. By so construing same, full effect will be given to said sections according to their plain meaning and intent. None of the cases cited by counsel for appellee are in conflict with this holding.

It is our conclusion that appellant's demurrer should not have been overruled on this ground.

II. Upon the question of estoppel, it

2. DESCENT AND DISTRIBUTION: surviving spouse: life insurance: estoppel.

appears that the insurance policy was listed by administratrix, appellant herein, in the inventory of the assets of the estate of deceased, and referred to in her application for allowance, but no reference is made thereto in the stipulation between herself and appellee settling their respective interests in the real estate of deceased. The allowance in favor of appellant for her year's support was reasonably consistent with the value of the estate, and it is not to be inferred that same was fixed with any special reference to the item of insurance. If the same would otherwise inure to the benefit of appellant, appellee was in no wise prejudiced by any order made by the court, nor does it appear that the terms of the stipulation for settlement above referred to were arranged under the belief on the part of appellee that she was entitled to one half of the money in controversy. She was not, apparently, misled in any way by the failure of appellant to earlier indicate her intention to assert a claim to the whole thereof, nor does

she appear to have acted in bad faith in the matter.

We find no ground for an estoppel in the record. *Laub v. Trowbridge,* 71 Iowa 396; *School Twp. v. Stevens,* 158 Iowa 119; *Busby v. Busby,* 120 Iowa 536.

The demurrer to the resistance to appellant's application should have been sustained; and for the reasons above pointed out, this cause must be, and is, reversed and remanded for further proceedings in harmony with this opinion.—*Reversed and remanded.*

Gaynor, C. J., Weaver and Preston, JJ., concur.