## In Re BABCOCK'S ESTATE

(266 N. W. 420.)

(File Nos. 7796 and 7797. Opinion filed April 7, 1936.)

284

*Loucks & Wohlheter*, of Watertown, for Appellant.

*Walter Stover*, of Watertown, (*George W. Prichard*, of Onawa, Iowa, of counsel), for Respondent.

CAMPBELL, J. Walter E. Babcock, a resident of Codington county, S. Dak., died testate on June 28, 1931. By his will he named Helen W. Holbrook as executrix and sole beneficiary. He left an estate in South Dakota consisting entirely of personal property of the value of approximately $3,000. In addition to such

personalty, there was in force at the time of his death a policy of insurance upon his life, payable to his estate, in the sum of $1,000. Claims against the estate have been filed with the executrix totaling approximately $35,000.

Walter E. Babcock and Myrtle A. Babcock, both then residing in Iowa, intermarried in 1910. No issue was born of the marriage. The parties continued to reside in the state of Iowa until the year 1924, when difficulties between them reached such a stage that they separated and have ever since lived apart. For the purposes of this opinion we will assume that separation was entirely the fault of Walter E. Babcock, and that the wife thereafter on several occasions offered to return and live with him, which offers he unjustifiably refused. After this separation in the state of Iowa in 1924, Myrtle Babcock went to various places, and finally, about 1927, to the state of California, where she has ever since resided and made her home. Walter E. Babcock remained somewhat longer in Iowa, and then, after some journeyings about the country, came to Codington county in 1926, and resided there continuously until the time of his death.

After the admission of his will to probate in the county court of Codington county, Myrtle A. Babcock made two separate applications to said county court. The first asked that said county court set apart to the petitioner certain wearing apparel and clothing of the decedent (including a watch and a diamond ring) and the sum of $750 in cash. The second asked that the executrix be directed to pay over to petitioner the sum of $1,000 in cash, being the proceeds of the insurance policy above referred to; the same having been paid to the executrix by the insurance company.

These petitions were contested by the executrix, and after due hearing in the county court both of them were denied and orders entered accordingly. From these orders of the county court the petitioner, Myrtle A. Babcock, appealed to the circuit court. Findings, conclusions, and judgment of the circuit court were in favor of petitioner, Myrtle A. Babcock, in both cases, and from those judgments, and from denial of her applications for new trial, the executrix, Helen W. Holbrook, has now appealed to this court, where, pursuant to stipulation and leave of this court, the matters have been briefed together. Appeal No. 7796 relates to the appli-

cation for wearing apparel and money in the sum of $750, and appeal No. 7797 relates to the application for proceeds of life insurance. A motion to dismiss the appeals was denied. In re Babcock's Estate, 64 S. D. 1, 263 N. W. 158.

■ ■ Before dealing with the appeals separately we may make the following general observations applicable to both. The parties, particularly respondent, seem to have believed one of the issues to be the question of whether or not Helen W. Holbrook, the executrix was ethically, morally, and perhaps legally chargeable with responsibility for the marital difficulties and separation of the Babcock's. The trial court found as a matter of fact that she was. We are unable to perceive how that question has any bearing whatever on these cases. It is conceded that the Babcocks separated in 1924, and never thereafter lived together as husband and wife. It appears from this record, in substance, that Walter E. Babcock deserted his wife, and that the fault of the separation was his. Whether or not he was motivated in so doing by an infatuation for appellant is entirely immaterial. After the separation of the parties, Walter E. Babcock transferred a considerable amount of property to his wife. The amount and value of those transfers seem also to have been considerably controverted in the court below. We can see no materiality to that point either, so far as these appeals are concerned.

■ ■ After the separation of the Babcocks through the fault of the husband, respondent (as hereinbefore recited) went to California, where she established her home and has ever since resided. She instituted an action against Walter E. Babcock in the state of Iowa in 1927 or 1928 seeking a divorce on the ground of desertion, but never prosecuted the action to a conclusion, and it was still pending at the time of his death. She testified that she continued to endeavor to re-establish marital relations with her husband, but that he refused. The fact remains that respondent, as she concedes, never lived in South Dakota and did live, as the trial court found as a fact, in the state of California. Walter E. Babcock made no contribution to her support after 1924, save as the transfers of property which he made to her might be so considered. It is the modern law that a wife lawfully living apart from her husband by reason of his wrongful conduct may, and or-

dinarily will, acquire a separate domicile for all purposes. See Beale, Conflict of Laws, p. 203 et seq. (1935). The circumstances here clearly indicate that the wife acquired a separate home in California as she was lawfully entitled to do, and that she was not at the time of the death of Walter E. Babcock a resident of, or domiciled within, the state of South Dakota either in fact or in law. The existence of that situation is material in this case of course, but the facts and circumstances which may have brought it about are not.

 Respondent questions the right of appellant, as executrix, to maintain these appeals. We think, under the circumstances disclosed by this record, that the executrix may appeal. Agnew v. Agnew (1928) 52 S. D. 472, 218 N. W. 633, 59 A. L. R. 1549; Woodbine Savings Bank v. Yager (1932) 61 S. D. 1, 245 N. W. 917. Cf. In re Estate of Reeves (1934) 62 S. D. 618, 256 N. W. 113.

 We turn now more specifically to the first appeal involving the allowance of wearing apparel and $750 in cash. It has been held by this court that a gold watch of moderate value carried constantly by the owner is "wearing apparel" within the meaning of the exemption laws. Brown v. Edmonds (1896) 8 S. D. 271, 66 N. W. 310, 59 Am. St. Rep. 762. And, for the purposes of this opinion, we will assume without deciding that the same is true of the diamond ring here involved. The application with reference to the wearing apparel and the $750 in cash is based, of course, on sections 3345 and 3346, R. C. 1919, which, so far as here material, read, respectively, as follows:

"Upon the death of any husband or wife or head of a family, having selected or being entitled to select a homestead as provided by law, the survivor or survivors of such homestead claimant, entitled thereto under the provisions of law, may continue to have exclusive possession of the homestead as defined by law until it is otherwise disposed of, and have the rents and profits thereof as a whole or in shares according to law and as it may be dealt with by law. And in addition thereto the following personal property must be immediately delivered by the executor or administrator to such surviving wife or husband and child or children, and is not to be deemed assets: * * * 5. All wearing apparel and clothing of the decedent and his family."

"In addition to the property mentioned in the preceding section, there shall also be allowed and set apart to the surviving wife or husband, or the minor child or children of the decedent, money or personal property to the amount of seven hundred and fifty dollars, to be, with the homestead, possessed and used by such surviving wife or husband, or the minor child or children; and the executor or administrator must make and return a separate and distinct inventory thereof, in the same manner as required for the property mentioned in the preceding section; and no such money or property shall be liable for any prior debt or claim against the decedent, except, when there are no assets available for the payment of the necessary expenses of the decedent's last illness, funeral charges and expenses of administration, such charges and expenses may be paid therefrom."

Similar statutes exist in many states, and the courts are in conflict as to the exact nature thereof and as to whether they apply in favor of a surviving non-resident widow or child. See cases collected in notes, 11 L. R. A. (N. S.) 361, and 26 A. L. R. 132. See also, cases cited and discussed in the majority and minority opinions in Re Metcalf's Estate (1933) 93 Mont. 542, 19 P. (2d) 905. We regard the matter as settled in this state by the decision of this court in Re James' Estate (1916) 38 S. D. 107, 160 N. W. 525, wherein it was held that the statutes are exemption statutes for the benefit of South Dakota families and do not contemplate the allowances therein mentioned to non-residents or in cases where a homestead has not been selected, or is not entitled to be selected, in this state. Respondent urges that we should depart from the rule of the James Case because, upon the adoption of the Revised Code of 1919, the clause "money or personal property to the amount of seven hundred and fifty dollars" was substituted in section 3364 in lieu of the clause "all such personal property or money as is exempt by law from levy and sale on execution or other final process from any court," which was the language of the prior statute (section 154, Probate Code 1903) discussed in the James Case. We do not believe this legislative change is controlling or material on this point. At the time section 154, Probate Code 1903 (now, with the change above mentioned, section 3346, R. C. 1919), originated, the amount of additional exemption to a

debtor was personalty "not to exceed in the aggregate fifteen hundred dollars in value." Section 324, Code Civ. Proc. 1877; section 5128, Comp. Laws 1887. By chapter 86, Laws 1890, the first Legislature of South Dakota amended section 5128, Comp. Laws, by reducing this additional exemption to a debtor, so that if the head of a family the exemption should not exceed in the aggregate $750 in value, and if a single person, not the head of a family, $300 in value. This has been the law since 1890, and is now embodied in the provisions of section 2659, R. C. 1919. Prior to the adoption of the 1919 Code there was considerable speculation and controversy in this state as to whether the probate exemption embraced in section 154, Probate Code 1903, by the language "all such * * * property or money as is exempt by law," etc., should be construed to mean $1,500 as was the law when the section originated, or to mean $750 pursuant to the change in the exemption law accomplished in 1890. It is quite obvious that the legislative change in language which was made when section 154, Probate Code 1903, became section 3346, R. C. 1919, was to settle this controversy. Except to accomplish that, we think it has no particular effect upon the statute and does not in any manner change its interpretation with reference to the point now before us. The instant case (as was the James Case) is plainly distinguishable upon the facts from In re Gillette's Estate (1921) 43 S. D. 509, 180 N. W. 952, where the widow had been in fact a resident of and domiciled within the state of South Dakota and the court held that she had never lost such residence and domicile as a matter of law. In the first appeal, therefore, we are of the opinion, upon the authority of the James Case, that the findings fail to support the conclusions and judgment entered in behalf of respondent.

We come now to the second appeal involving the proceeds of the $1,000 life insurance policy payable to the estate of the decedent. The claim of respondent to the insurance proceeds is based upon sections 2661 (as amended, chapter 148, Laws 1923) and 9310, R. C. 1919, relevant portions of which are as follows:

"The proceeds of any insurance upon the life of any person, residing in this state at the time of his death and who leaves a surviving widow, husband, or minor child or children, payable

upon his death to his order or to the order of his assigns, estate, executor or administrator, and not assigned to any other person, shall, to any amount not exceeding Five Thousand Dollars ($5,-000.00) inure to the use of such surviving widow, husband, minor child or children; and to such amount shall not be subject to the payment of any debt of such decedent, or of such surviving widow, husband, minor child or children."

"The proceeds of a policy of insurance, to the extent of five thousand dollars, on the life of an individual, in the absence of an agreement or assignment to the contrary, shall inure to the separate use of the husband or wife and children of such individual, independently of his creditors."

Comparable statutes exist in many jurisdictions. See Couch, Cyclopedia of Insurance Law, vol. 2, § 330 et seq. It is undoubtedly true that these statutes are in a sense exemption statutes, and that in some respects they operate as such, as we set out at some length in Schuler v. Johnson (1933) 61 S. D. 141, 246 N. W. 632, but it is also true that they are likewise statutes of distribution, whether the beneficiaries be deemed to take by contract or by descent. That the statutes were more than mere exemption statutes this court had occasion to point out in De Zotell v. Mutual Life Ins. Co. (1932) 60 S. D. 532, 245 N. W. 58. See, also, Meyer v. Meyer (1910) 25 S. D. 596, 127 N. W. 595; Farmers' State Bank v. Smith (1917) 36 N. D. 225, 162 N. W. 302; Anderson v. Northern, etc., Co. (N. D. 1935) 261 N. W. 759; In re Estate of Ensign (1917) 181 Iowa, 1081, 165 N. W. 319; White v. Bickford (1922) 146 Ten. 608, 244 S. W. 49, 26 A. L. R. 129. We are of the opinion that these statutes are not limited in their application to resident surviving wife, husband, or children. See White v. Bickford, supra; Stark v. Stark, (1927) 203 Iowa, 1261, 213 N. W. 235. We are of the opinion, therefore, that respondent was entitled to the insurance proceeds under the circumstances appearing in this record.

It follows, therefore, that the judgment and order appealed from in case No. 7796 (involving the wearing apparel and personal property to the amount of $750) are reversed and the cause is remanded, with directions to the trial court to enter judgment in favor of the executrix upon the present findings. In case No.

7797 (involving the insurance proceeds) the judgment and order appealed from are affirmed.

Both appeals having been briefed and submitted together, and appellant having prevailed in one and respondent in the other, no costs will be taxed in this court in either.

All the Judges concur.